ANNE MCCONNELL  
    v.  
ROBERT EDMONDSON &  
JAMES M. LEWIS.       ) CHANCERY.

WHITE, J., delivered the following statement of the case, and opinion of the court.—

The complaint in this bill is, that William T. Lewis, the elder, in the year 1802, made his last will and testament, and therein, after some small bequests to other persons, bequeathed to the complainant, one-third part of his estate, upon condition that her husband, who was then living, come to a fair settlement with his executors, and pay them what he owed him, and likewise account for $250, the value of two small negroes which had before been given

to the complainant—that he bequeathed to Mrs. Fielder, another of his daughters, one-third part of his estate upon the like condition, and to James M. Lewis, the remaining one-third, upon condition that he came to a fair settlement and paid what he owed him. That in 1814 the testator died, having appointed the defendants his executors, one of whom, Edmondson, proved the will and took upon him the execution thereof; and that the complainant has always been ready to come to a settlement and pay what was due.

The bill further charges that James M. Lewis was indebted to the testator in the sum of 300 pounds, by a bond, the possession of which he obtained after the death of the testator, and which he now refuses to pay. That in the lifetime of the testator, James M. Lewis, by fraudulent means obtained from him a bill of sale to negro Matt, which he will not deliver up or account for. The bill prays that the amount of the bond and the value of Matt may be accounted for, and divided between the complainant and Mrs. Fielder, excluding James M. Lewis from any share.

Edmondson, in his answer professed a readiness to divide the estate as the court may direct, and states that the testator, in his lifetime, delivered to him for safe keeping, the bond in question—that sometime afterwards James M. Lewis produced to him an order for the bond, but that he would not deliver it; and that he carried it to the testator, who handed it to James and told him to put it into a trunk.

James M. Lewis, in his answer, states that his father gave him the bond, and that he voluntarily, and without being induced thereto by fraud, conveyed to him negro Matt, as a compensation for living with him. He insists

81

upon receiving his part of the estate, without accounting for the money due by the bond, or the value of Matt.

(1) The principal question is, whether this bond and negro are to be considered as a part of the testator's estate. It appears in evidence that the testator sold and conveyed to James a tract of land in North Carolina, for which this bond was given. When he first moved to Tennessee, he lived with his son Joel Lewis for sometime, and afterwards with Fielder; but that for sometime before his death, he lived with James. He was then about eighty six years old, much enfeebled by old age, and upon some occasions, did not know his neighbors, or the names of his children or negroes; but at other times he appeared to understand his interest well enough for one of his advanced age. The bill of sale in which Matt is included, conveys several other negroes, viz: China and her children, which belonged to James, but for whom no bill of sale had been previously given. The subscribing witness says that this defendant James came to where he was, with the bill of sale written, and asked him to go to the testators room and witness a bill of sale for China and her children. The name of Matt was not mentioned. When they went to the room James observed to the old man that he had written the paper they had been speaking of, and asked him to get up and sign it. The old man did so accordingly, being assisted out of the bed, and lead to the table by James; but the bill of sale was not read. The bill of sale is dated in March 1803, and there is no proof that it was known until after the old man's death. The testator died in 1804, after which, upon the discovery of the bill of sale, and upon James being reproached by John P. McConnell for improper conduct in relation to the bond and the negro, he said that he intended letting the complainant have her share, but Fielder had got enough.

It is in proof, that after the date of the will, the bond was given to James by the testator.

For the complainant it has been insisted that the circumstances proved are sufficient to show that in truth the bond never was given up with any intention of giving the debt—and that there is enough proved to show that the old man was deceived and defrauded by the insertion of Matt's name in the bill of sale and that at all events it is clear the testator, when he made the will, believed James all indebted to him the amount of this bond—and if he afterwards gave it up, it was an ademption of the legacy given in the will, and the residence of his property ought to be divided between his daughters.

The defendant, James in his answer states that the bond was given up to him. This statement is supported by the testimony of Wm. T. Lewis the younger and Robt. Bingo, each of whom state, that the testator in his lifetime told them so, and the testimony of the first shows clearly, that the testator well knew, what he had done and stated reasons for so doing, that might convince the court, he was not in that matter imposed upon but had acted upon reflection. There is no evidence on the other side of this question that ought to have the effect of disproving the answer and the statements made by these witnesses—hence this bond cannot be considered any part of the estate, which ought now to be divided.

With respect to negro Matt, he ought to be considered a part of the estate; the bill of sale is dated in March 1803, the old man lived twelve months afterwards during which period no human being, except the defendant James, knew anything of his being given—the subscribing witnesses were told the bill of sale was for China and her children. It was not read by the old man or to him—

the witness continued to live then until the ensuing fall and never heard one word on this subject. McConnell was in the store of James M. Lewis at the time, and continued there until the November following, and this matter was never mentioned. The bill of sale was not proved or recorded until the testator's death in 1804. *(2)* The testator lived with the defendant, was enfeebled from old age, nature almost exhausted. One of the most fit subjects for imposition. Under all these circumstances we are constrained to believe, it never was the testator's intention thus to dispose of this negro.

We do not intend to decide that the father could not give property to this child—far otherwise—but when a gift from a father, in testator's situation is alleged, there ought to be some circumstances to show that the father knew what he was doing and did in fact voluntarily make the gift—either the friends or others of respectability ought to be called to witness the transaction, who could remove any suspicions by showing it was openly and fairly done.

From the proof three hundred and fifty dollars is a reasonable price for Matt, that sum James M. Lewis must account for as a part of his father's estate with interest upon it from testator's death.

*(3)* It is further believed, that the defendant James is not entitled to any share whatsoever under this will. At the time, it was made he owed this three hundred and fifty pounds and considerable interest thereon—it was this bond—was to settle for and pay the executors to entitle himself to one third of the estate—the will is dated in 1802—the testator died in 1804—between those periods this bond is given up by the testator—this must be considered an ademption of the legacy. The whole will shows the testator did not intend to die intestate as to

84

any part of his property and that he intended complete equality between his son and his two daughters, hence he directs the daughters to bring into hotchpot, what they had received—their husbands to pay what they owed—the defendant James to pay what he owed and then a third part of the whole is given to each.

As the testator gave the defendant the only sum which he owed and that sum is more than one third part of the whole estate, he surely cannot keep that and come in for one third part of the estate likewise—this would frustrate the main object the plaintiff had in view. The estate including Matt must be divided between Mrs. McConnell and Mrs. Fielder, the two daughters.

HAYWOOD and BALCH, for the complainant.

WHITESIDE, for the defendant.